STATE EX REL. R. H. SALISBURY v. A. B. CROOM AND BOARD OF DIRECTORS OF STATE HOSPITAL, RALEIGH.

(Filed 11 November, 1914.)

1. **Public Officers—Appointment—Constitutional Law—Legislative Powers— Hospitals for the Insane—Directors.**

By amendment to Article III, sec. 10, of our Constitution by the Convention of 1875, the express inhibition of the General Assembly to appoint officers to offices created by statute was taken away, and the inherent right of the Governor to appoint is now restricted to constitutional offices and where the Constitution itself so provides; and all offices created by statute, including directorates in State institutions—in this case, the State Hospital at Raleigh—the power of appointment, either original or to fill vacancies, is subject to legislative provision as expressed in a valid enactment.

2. **Public Officers—Hospitals for the Insane—Directors—Appointments—Interpretation of Statutes—Concurrence of Senate.**

Revisal, sec. 4547, providing directorates for hospitals for the insane, enacts, among other things, that each corporation shall be under the management of a certain number of directors, divided into classes, the terms

of each class expiring at different times, "nominated by the Governor and, by and with the advice and consent of a majority of the Senators-elect, appointed by him," and after making provisions as to quorums, etc., concludes that "after the' expiration of their said respective· terms of office, all appointments shall be for a term of six years, except such as are made to fill unexpired terms." *Held,* it was the design and purpose of the Legislature that the consent and approval of the Senate, as stated, be required for a valid appointment by the Governor to fill unexpired terms as well as full terms, and that the sole power of appointment of the Governor is derived under Revisal, sec. 5328, subsec. 3, to fill vacancies when. the Senate was not in session, and until it met and concurred in his appointment. *Boynton v. Heartt,* 158 N. C., 488, cited and distinguished ; *State's Prison v. Day,* 124 N. C., 362, overruled.

**3. Public Officers—Appointments—Ouster—Process—Concurrence of Senate —Color of Right—Interpretation of Statutes.**

Revisal, sec. 2368, providing in effect that a person "admitted and sworn into any office shall be held, deemed, and taken, by force of such admission, to be rightfully in such office, until by judicial sentence, upon a proper proceeding, he shall be ousted therefrom," etc., applies to such persons who, having duly qualified, are performing the duties of the office under color of right, and not to the facts of this case, where the appointee of the Governor, requiring the concurrence of the Senate in order to hold his office for the full unexpired term of his predecessor, is holding over after the Senate has met and concurred in the appointment of another.

**4. Public Officers—Quo Warranto—Ouster—Process—Interpretation of Statutes.**

A relator in *quo warranto* proceedings to try title to office accepts the position that he has been displaced in the office by the form of action in which he seeks to assert his rights, and may not therein avail himself of the position that under our statute, Revisal, sec. 2368, he should have been ousted therefrom by a judicial sentence, under a proper proceeding, etc.

APPEAL by plaintiff from *Bond, J.,* at July Term, 1914 of WAKE.

Civil action to try title to position as director of the Central State Hospital, heard on case agreed. The facts submitted were as follows:

R. H. Salisbury and A. B. Croom claim the title to the same office of director of the State Hospital at Raleigh, the office being the one occupied by J. D. Biggs and by him resigned, and the term therein expiring in 1917.

1. J. D. Biggs, in March, 1911, with the confirmation of the Senate, was appointed for a full term of six years to said office, and qualified.

2. In 1912 J. D. Biggs resigned said office, and thereafter, on 8 November, 1912, the Governor of the State, while the Legislature was not in session, appointed by commission, a copy of which is hereto attached, R. H. Salisbury a director to fill the vacancy created by the resignation of said. Biggs, and said Salisbury accepted and qualified as such director.

3. R. H. Salisbury's name was never sent to the Senate, and his said appointment was not confirmed by the Senate.

4. In March, 1913, the Governor of the State nominated and the Senate confirmed and the Governor appointed by commission, a copy of which is hereto attached, A. B. Croom a director to fill the same vacancy in the term expiring in 1917, which was then held by R. H. Salisbury, and said Croom accepted and qualified as such director.

5. That on 17 December, 1913, the board of directors of the State Hospital, by a majority vote on a resolution, excluded Salisbury from further participation as a member of said board.

6. That plaintiff duly applied for leave to bring this action; the Attorney-General duly granted the same; all proper bonds have been given, and the summons has been duly served.

7. It is agreed that if as a matter of law said Salisbury's appointment for the full vacancy in said term was valid, without confirmation and approval by the Senate, then judgment shall be entered for plaintiff, relator, confirming his right to said office; and it is agreed that if Salisbury's appointment was invalid for the full vacancy, or if Croom's appointment under the facts was legal and valid, then judgment shall be entered for A. B. Croom, confirming his right to said office and approving the action of the board excluding Salisbury.

By Governor's commission, the relator, R. H. Salisbury, was appointed to fill the vacancy "caused by the resignation of John D. Biggs for the term expiring 28 February, 1917," and conferred upon him "all the rights, privileges, and powers useful and necessary to the just and proper discharge of the duties of his appointment."

Upon these facts, the court rendered judgment as follows:

The parties in this action of *quo warranto*, involving the title to the office of director of the State Hospital at Raleigh, having agreed that the same should be tried at this term of the court upon a statement of facts agreed, wherein it was submitted that if as a matter of law the plaintiff's appointment was valid without approval of the Senate, then judgment shall be entered for plaintiff, relator, confirming his right to said office; and that if the plaintiff's appointment was invalid for the full vacancy, or if the defendant Croom's appointment was legal and valid, that judgment shall be entered in favor of the defendants, confirming the said Croom's right to said office, etc. And the court being of opinion that the appointment of the plaintiff, relator, was invalid, for that the same had not been confirmed by the Senate, it is, therefore, ordered, considered, and adjudged that the title to the office of director

of the State Hospital at Raleigh is in the said defendant A. B. Croom, and that the defendants recover of the plaintiff their costs and disbursements in this action, to be taxed by the clerk.

W. M. BOND,
*Judge Presiding.*

From this judgment plaintiff excepted and appealed.

*Manning & Kitchin for plaintiff.*
*R. C. Strong for defendant.*

HOKE, J. The Constitution of 1868, Article III, sec. 10, made provision that the Governor, by and with the advice and consent of a majority of the Senators-elect, appoint all officers whose offices are established by the Constitution or *which shall be* created *by law* and whose appointments are not otherwise provided for, and no such officer shall be appointed or elected by the General Assembly.

Construing this and cognate sections of the Constitution in reference to vacancies, etc., it .was held in various decisions that the term, "unless otherwise provided for," meant unless otherwise provided for by the Constitution itself, and that, except in specified and restricted instances, the Legislature had no power to appoint to office or to fill vacancies therein. *Nichols v. McKee,* 68 N. C., 429; *Welker v. Bledsoe,* 68 N. C., 457; *Clark v. Stanly,* 66 N. C., 59. This interpretation and consequent method of appointment to office and filling vacancies therein not being satisfactory to the dominant sentiment in the State, this article and section of the Constitution, as it then existed, and others of kindred nature, were altered by the Convention of 1875, and it was then established and now remains as follows (Art. III, sec. 10): "The Governor shall nominate and, by and with the advice and consent of a majority of the Senators-elect, appoint all officers whose offices are established by this Constitution and whose appointments are not otherwise provided for." It will thus be noted that the inhibition on the legislative power to appoint to office is removed and the inherent power of the Governor to appoint is restricted to constitutional offices and where the Constitution itself so provides. Accordingly, it has since been the accepted view that, in all offices created by statute, including these directorates and others of like nature, the power of appointment, either original or to fill vacancies, is subject to legislative provision as expressed in a valid enactment. *Cherry v. Burns,* 124 N. C., 761; *Cunningham v. Sprinkle,* 124 N. C., 638. In *Cherry's case* it was held:

"1. Constitutional offices must be filled in the mode designated in the Constitution.

"2. Under the amended Constitution of 1875, the Legislature may provide for the filling of any office created by statute.

"3. The office of keeper of the Capitol is a legislative office. By the act of 23 February, 1899, amending section 2301 of The Code, the Legislature conferred upon themselves the power to fill that office—and on 6 March, 1899, elected the plaintiff."

This being the status of the matter so far as the question of power is concerned, in Revisal, ch. 97, sec. 4547, the General Assembly enacted that: "Each corporation shall be under the management of a board of nine directors, no two of whom shall be resident of the same county, nominated by the Governor and, by and with the advice and consent of a majority of the Senators-elect, appointed by him, of whom five shall be a quorum, except when three of their number are in this chapter empowered to act for special purposes. Each board of directors shall be in classes of three, as they are now divided, and the term of office of such classes shall expire as follows: Those of the first class on 1 April, 1905; of the second class, on 1 April, 1907; and of the third class, on 1 April, 1909. At the expiration of their said respective terms of office, all appointments shall be for a term of six years, except such as are made to fill unexpired terms."

A perusal of this statute will disclose that it is the design and expressed purpose of the Legislature that these institutions shall be controlled and managed by a directorate who are appointed by the Governor, by and with the advice and consent of a majority of the Senators-elect, and from the closing paragraph it also sufficiently appears that this careful and circumspect method shall prevail not only for the full term, but for unexpired terms, and, while the Governor alone, under the general power to fill vacancies conferred by section 5328, subsec. 3, of the Revisal, "That he is to make appointments and supply vacancies not otherwise provided for in all departments," may make appointment to this position when the Senate is not in session, such action could only be for the interval until the Senate meets and the two agencies, specially provided by the law, towit, the Governor and the Senate, shall concur in appointing his successor.

This principle, that when the Constitution and statutes especially applicable require that the Governor and the Senate shall concur in making an appointment, the appointee of the Governor, *ad interim,* under a general power, shall, unless the Constitution or some statute otherwise provides, hold only until his successor has been regularly selected and qualified, finds support in the position obtaining here, that in cases permitting construction, the correct rule of interpretation favors a recurrence to the original methods of selection (*Rodwell v. Rowland,* 137 N. C., 617), and is, we think, in accord with right reason and is well sustained by authority. *People ex rel. Laine v. Tyrrell,* 87 Cal., 475; *People ex rel. Cagman,* 20 Cal., 504; *State ex rel. Meyer,* 27 La. Anno.,

569; *S. v. Raveshede,* 32 La. Anno., 934; *In re Marshalship So. Ala.,* 20 Fed., 379; *State ex rel. Robert v. Murphy,* 32 Fla., 138; *Krop v. Smoot,* 62 Md., 172; Throop on Public Officers, sec. 328; Mechem on Public Officers, sec. 139.

The decision upholding the term of an *ad interim* appointment till the end of the next legislative session is by reason of some positive provision of the Constitution or statute, as in the case of the Federal Constitution, Art. II, sec. 2, and is an extension of the tenure which would otherwise prevail. And the fact that the Governor, in the designation of the relator as director, mistaking his power, essayed to appoint him for the whole unexpired term, does not affect the result. The appointment holds till the proper appointing powers concur in selecting his successor, and then expires. Throop on Public Officers, sec. 313.

The authorities relied upon by the relator are chiefly decisions construing the Constitution of 1868, and the only authority in this State favoring plaintiff's position under the Constitution as amended in 1875 is that of *State Prison et al. v. Day,* 124 N. C., 362, and, in reference to the issue now presented, the majority of the Court, making only a casual reference to the question, rested its decision on *People v. McIver,* 68 N. C., 467, a case construing the constitutional provision as it formerly stood. This was pointed out with great effect in the vigorous and learned dissent of the present *Chief Justice* in *Day's case,* a dissent which has since prevailed and recognized by a unanimous Court in *Mial v. Ellington,* 134 N. C., 159, and other decisions, as the law of the land. And the case of *Boynton v. Heartt,* 158 N. C., 488, in no way conflicts with our decision. That case was concerning the position of public administrator, and it appearing that there was no time fixed by the statute for an appointment to begin or terminate, and that the filling of an unexpired term was neither provided for nor contemplated, it was held that an appointment to that position should always be for a full term; but in the present case the statute, section 4547, fixes definitely the termination of each office and there is express provision for the filling of unexpired terms and, by correct inference, in the same way as that of original appointments, except for an intervening period when the Senate is not in session, in which case a temporary appointment may be made, under section 5328, the same as we have stated, and expires by limitation whenever the office is filled by the regularly constituted appointing power.

We were further referred by counsel to Revisal, sec. 2368, to the effect that "Any person who shall, by the proper authority, be admitted and sworn into any office shall be held, deemed, and taken, by force of such admission, to be rightfully in such office, until, by judicial sentence, upon a proper proceeding, he shall be ousted therefrom, or his admission thereto be, in due course of law, declared *void;* . . ." The

position being that the board acted without warrant of law in inducting respondent into office; but the portion of the section, as quoted, may not avail plaintiff. It can only apply, in any event, to persons who, having duly qualified, are filling the duties of the office under color of right: as we have endeavored to show, the appointment of the relator only held until his successor was regularly appointed by the concurrent action of the Governor and the Senate. His commission expiring at that date, he must be held, from that time, without color. *S. v. Taylor,* 108 N. C., 196; *Kimball v. Raymond,* 45 Miss., 151; Throop on Public Officers, sec. 623 *et seq.;* Mechem on Public Officers, sec. 319.

Apart from this, the relator has accepted the position of having been displaced by the form of action on which he now seeks to assert his rights. If, in violation of this section, he had been wronged by the action of the board, some remedy might be open to him, but in the present form of action the only question presented is, Which has the right to office? Throop on Public Officers, sec. 781; 17 Enc. Pl. and Pr., 452.

For the reason heretofore indicated, we are of opinion that the matter has been correctly decided, and the judgment for respondent is

Affirmed.