[S. F. No. 14871. In Bank.—May 27, 1933.]

PANSY JEWETT ABBOTT, as Superintendent of Schools, etc., Petitioner, v. MAXWELL McNUTT et al., as Judges, etc., Respondents.

Edmund Scott, District Attorney, John W. Colebeerd, Robert L. McWilliams, Ernest A. Wilson and Arthur H. Redington for Petitioner.

A. A. Heer and J. H. Sapiro for Respondents.

David Cosgrave, Louis Dematteis and W. H. Morrissey as *Amici Curiae* on Behalf of Respondents.

THOMPSON, J.—Application for a writ of *mandamus*.

At the general election held in November, 1932, the electors of San Mateo County ratified and adopted a county charter theretofore prepared and proposed by a board of freeholders. In January, 1933, the state legislature, by concurrent resolution of the senate and assembly, approved said charter. Among other things, the charter provides for a chief executive officer, in effect a county manager, to be known as the county executive. This officer is to be appointed by the board of supervisors of the county. However, an initial or preliminary step to the selection of such officer is the consideration of qualifications of applicants for the office and a determination of the five candidates found to possess the highest qualifications therefor, if five there be, otherwise so many thereof, not less than two, as are found to possess the necessary qualifications. The duty of considering and determining the qualifications of applicants for the position of county executive is imposed upon and vested in a "qualification board" created by section 2 of article IV of the charter. It is the constitutionality of this section of the charter that is here brought in question. The membership of the "qualification board" therein provided for is made to consist of the two judges of the Superior Court of San Mateo County, or their nominees in the event they, or either of them, decline to serve, the county superintendent of schools, a fourth person to be selected by the aforementioned three persons, and a fifth person to be selected by the board of supervisors. The members of the "qualification board" so constituted are required to take the constitutional oath of office, serve without compensation, and are charged with the duty of soliciting and obtaining applications of candidates for appointment to the office of county executive and thereafter submitting to the board of supervisors, the appointing body, a list of persons "qualified" to fill the position. In the event the board of supervisors is unable to agree upon an appointment from the list so submitted "the clerk of said board of supervisors shall notify the qualification board of such fact, and it shall thereupon be and become the duty of the qualification board to solicit and obtain, and to select and submit, to the board of supervisors, other candidates possessing the aforesaid

qualifications, . . . The exercise of such power by said qualification board shall not be exhausted by a single reference, nor until an appointment shall in fact have been made by said board of supervisors." Section 3 of article IV of the charter provides that upon an appointment being made to the office of county executive the "qualification board shall be automatically dissolved". In the event of a subsequent vacancy in the office of county executive "a *new* qualification board" is to be selected in the manner above described.

The two respondent judges of the superior court who, by virtue of their office as judge, are made members of this "qualification board" decline to act as members of said board until it is judicially determined that with propriety they may so act. Hence this *mandamus* proceeding instituted by the Superintendent of Schools of San Mateo County, also a member of said board, to test the validity of the above cited charter provision, in the light of certain provisions of our state Constitution.

Section 1, article III, of the Constitution provides: "The powers of the government of the state of California shall be divided into three separate departments—the legislative, executive, and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted."

As regards this particular provision the respondents in their points and authorities submitted in support of their general demurrer to the petition concede that if this "were the only provision of the Constitution upon the subject, it is not to be doubted that judicial officers of the state might be appointed or elected to other offices of inferior and subordinate governmental institutions or instrumentalities, such as cities or counties, provided, only, that in exercising the power of these other offices they do not exercise any function pertaining to the legislative or executive departments of the state". It was so held by this court in the cases of *People* v. *Provines,* 34 Cal. 521, and *Staude* v. *Election Commrs.,* 61 Cal. 313, 322, 323.

Respondents contend, however, that the present proceeding turns solely upon the question of whether or not membership upon the "qualification board", above described,

constitutes such an "office or public employment as judges of the superior court are made ineligible to by the provisions of section 18 of article VI of the Constitution". That section reads:

"The justices of the Supreme Court and of the District Courts of Appeal and the judges of the superior courts and the municipal courts shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected or appointed, and no justice or judge of a court of record shall practice law in or out of court during his continuance in office; *provided, however,* that a judge of the superior court or of a municipal court shall be eligible to election or appointment to a public office during the time for which he may be elected, and the acceptance of any other office shall be deemed to be a resignation from the office held by said judge."

The phrase "any other office or public employment" necessarily has application to any other *public* office or *public* employment, as distinguished from a purely private office or private employment. The only constitutional inhibition against the private employment of judicial officers has to do with the practice of the law. Research fails to disclose any case construing or applying that portion of the constitutional provision above quoted. However, the purpose and policy underlying such a provision is cogently stated by Justice Cardoza in *In re Richardson,* 247 N. Y. 401 [160 N. E. 655, 661], wherein the following appears: "The policy is to conserve the time of the judges for the performance of their work, and to save them from the entanglements, at times the partisan suspicions, so often the result of other and conflicting duties." In other words, it is intended to exclude judicial officers from such extrajudicial activities as may tend to militate against the free, disinterested and impartial exercise of their judicial functions.

In our opinion service upon the "qualification board" by the respondent judges would be in contravention of the purpose and policy underlying the constitutional inhibition. As already stated, the charter provision requires that the qualification board continue to solicit and select and submit to the board of supervisors lists of qualified candidates for the office of county executive until such time as the board

of supervisors determines upon an appointee for that office. It is conceivable that this duty may so consume the time of the respondent judges as to seriously embarrass, if not in fact impede, the orderly and proper discharge of their judicial functions. What may reasonably be done under a statute, is the test of its validity.

Moreover, service upon said qualification board may tend to involve the respondent judges in those "entanglements" and subject them to those "partisan suspicions" of which the constitutional inhibition, in its wisdom, seeks to free them. To illustrate: If the respondent judges are permitted to serve upon the qualification board, it is not at all unlikely that at some time in the future they may be called upon, as judicial officers, to pass upon the propriety or validity of the official acts of the county executive whom they recommended and indorsed as qualified for appointment to that office. Or, in the event of misfeasance in office of the county executive, the respondents as superior court judges may, under sections 758–769 of the Penal Code, be required to preside at a trial having for its purpose the removal from office of an incumbent theretofore recommended by them as qualified for the position. Either or both of these situations pointedly indicate the impropriety of service by the respondent judges on the qualification board.

Having definitely in mind the public policy underlying the constitutional inhibition, we are satisfied that membership on the "qualification board" constitutes an "office or public employment" within the purpose and intent of section 18 of article VI of the Constitution. A public office is ordinarily and generally defined to be the "right, authority, and duty, created and conferred by law, the tenure of which is not transient, occasional, or incidental, by which for a given period an individual is invested with power to perform a public function for the benefit of the public. . . . The most general characteristic of a public officer . . . is that a public duty is delegated and entrusted to him, as agent, the performance of which is an exercise of a part of the *governmental functions* of the particular political unit for which he, as agent, is acting." (*Coulter* v. *Pool,* 187 Cal. 181, 186 [201 Pac. 120].) The foregoing is peculiarly applicable to the present case. The duties to be discharged by the qualification board are *governmental* in

character and continuous in the sense that it is mandatory upon the members thereof to submit, after examination and consideration, lists of qualified candidates until such time as the board of supervisors in its discretion selects and appoints a county executive from those so indorsed. The duties of the qualification board are not, therefore, necessarily discharged by a single act. Then again, in the event of subsequent vacancies in the office of county executive a "new" board, consisting of the same judicial members so long as San Mateo County continues to have but two superior court judges, is formed and charged with the identical duties of its predecessor. Members of the qualification board are required by section 3 of article IV to take the constitutional "oath of office". ■ The fact that they serve without compensation is immaterial for an emolument is not an indispensable element of an office. (*State* v. *Kennon*, 7 Ohio St. 547, 559; *State* v. *Stanley*, 66 N. C. 56, 60 [8 Am. Rep. 488].)

To assume, as petitioner would have us do, that the duties of the qualification board are purely transient and occasional in character and therefore not such as to bring membership on the board within the above general definition of an "office", does not suggest a different conclusion. In our opinion, service upon the qualification board, even though spasmodic and occasional, would constitute such other "public employment", within the meaning of the constitutional provision, as may reasonably tend to prove incompatible, for the reasons already assigned, with the due and proper discharge by the respondents of their judicial functions. In other words, the test of whether the character of the public duty is transient is incomplete, because it remains to be determined whether the discharge of such public duty will, or may reasonably tend to, interfere with the due administration of the law. No hard-and-fast rule can be set down. Each case must turn upon its own peculiar circumstances. As already indicated, we are of the opinion that the discharge of the public, governmental duties imposed upon the respondents by the charter provision here in question will, or may reasonably tend to, embarrass or impede the respondents in the exercise of their judicial duties. This being so, the charter provision runs counter to the purpose and intent underlying the constitutional

inhibition and must therefore be declared invalid in so far as it purports to impose extrajudicial duties upon the judges of the Superior Court in and for the County of San Mateo.

The cases relied on by petitioner, while declaring that transient and occasional duties of an extrajudicial character may be conferred upon judicial officers without doing violence to a constitutional inhibition precluding such officers from holding any other public "office", concerned themselves generally with such transient extrajudicial duties as are compatible and consistent with the untrammeled exercise of the judicial function. Such a case is *People* v. *Nichols,* 52 N. Y. 478, 485 [11 Am. Rep. 734], wherein was questioned a statute designating a judge and two other persons as a body or board charged with the duty of passing upon the authenticity of certain relics and of determining whether they were desirable for a state museum. The exercise of such a special and transient extrajudicial function obviously could not interfere with the proper discharge of the judge's judicial duty. The same may be said of a statute authorizing a judicial officer to issue a call for military aid to suppress a riot. (*People* v. *Bard,* 209 N. Y. 304 [103 N. E. 140, 141].) Likewise, the performance of administrative duties as to matters incidental to the exercise of the judicial power or which have some reasonable connection with a judicial purpose has been sanctioned. (*In re Richardson, supra,* at page 660 of 160 N. E.)

█ If, as we have determined, the respondents are precluded by the constitutional provision from serving on the qualification board, it necessarily follows that they are under no mandate to appoint nominees to serve for them.

█ Under section 2b of article III of the charter, the board of supervisors is given general power of appointment of "all appointive county officers, boards and commissions, whose appointments . . . are not otherwise provided for by this charter". The conclusion announced herein in no way interferes with such general power of appointment.

The peremptory writ of mandate is denied.

Curtis, J., Shenk, J., Seawell, J., Langdon, J., and Preston, J., concurred.